# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

Lucy, Benjamin, on behalf of themselves and all those similarly situated,

*Plaintiffs*,

v.

Jonathan Skrmetti, in his official capacity as the Tennessee Attorney General; Jeff Long, in his official capacity as the Commissioner of Safety and Homeland Security for the State of Tennessee; Charme Allen, in their official capacity as the District Attorney General for the Sixth Judicial District of Tennessee; Russell Johnson, in his official capacity as the District Attorney General for the Ninth Judicial District of Tennessee; Bryant C. Dunaway, in their official capacity as the District Attorney General for the Thirteenth District of Tennessee; Jason Lawson, in their official capacity as the District Attorney General for the Fifteenth Judicial District of Tennessee; Glenn Funk, in his official capacity as the District Attorney General for the Twentieth Judicial District of Tennessee; Stacey Edmonson, in her official capacity as the District Attorney General for the Twenty First Judicial District of Tennessee; Ray Crouch, in his official capacity as the District Attorney General for the Twenty Third Judicial District of Tennessee;  Neil Thompson, in his official capacity as  the District Attorney General for the Twenty Fourth Judicial District of Tennessee; Mark Davidson, in his official capacity as the District Attorney General for the Twenty Fifth Judicial District of Tennessee; Jody Pickens, in her official capacity as the District Attorney General for the Twenty Sixth Judicial District of Tennessee; Fred Agee, in his official capacity as the District Attorney General for the

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

 Case No.

Twenty Eighth Judicial District of Tennessee; and Steve Mulroy, in his official capacity as the District Attorney General for the Thirtieth Judicial District of Tennessee,

*Defendants*.

2

1. This action challenges Section 1 of House Bill 1704 (114th General Assembly) ("H.B. 1704"), which purports to give Tennessee state officials the unprecedented power to regulate the removal of noncitizens. Section 1 of H.B. 1704 makes it a Class A misdemeanor under state criminal law for certain noncitizens with final removal orders to intentionally fail or refuse to depart Tennessee—expelling these individuals from their homes under threat of up to a year in jail. Under the extraordinary scheme in H.B. 1704, the State of Tennessee has created its own crime that applies only to certain noncitizens who refuse or fail to depart the state and that empowers Tennessee state police to arrest and detain noncitizens for alleged violations, and Tennessee state prosecutors to bring charges in state courts. The federal government has no role in the enforcement of this crime.

2. Section 1 of H.B. 1704 violates the Supremacy Clause of the United States Constitution. Removal from the country is a quintessentially federal authority. Courts have long and repeatedly recognized the dominant federal interest in removal, which flows directly from the sovereign powers of the federal government—powers that the states do not have.

3. Congress has comprehensively and extensively regulated the removal of noncitizens, including those with final removal orders. Congress has detailed the time period and country for a noncitizen's removal, has prescribed a process for seeking judicial review, and has allowed noncitizens with final orders to petition for various forms of immigration relief. Congress has also set up a removal system that provides federal officials with considerable discretion over all parts of the process, including whether and when to execute removal orders. And Congress has created crimes that regulate noncitizens with final removal orders and provided federal officials with the discretion to decide when arrest and prosecution is appropriate.

3

4. Section 1 of H.B. 1704 jettisons this system, grasping control over removal from the federal government and allowing Tennessee to unilaterally prosecute noncitizens for refusing or failing to depart the state with no federal control or input.

5. Section 1 of H.B. 1704 is preempted. A state cannot replace Congress's immigration scheme with its own.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Middle District of Tennessee because a substantial portion of the relevant events occurred or will occur in the District and because several Defendants reside in the District. 28 U.S.C. § 1391(b).

**PARTIES**

8. Plaintiff Lucy is a 58-year-old citizen of a foreign nation. She entered the United States in about 2000 on a visitor's visa and overstayed her visa. Because she had been admitted, the government charged her as deportable under 8 U.S.C. § 1227(a)(1)(B) for being a noncitizen who remained beyond her authorized period of admission. Lucy then applied for asylum, but an immigration judge found her removable under 8 U.S.C. § 1227(a)(1)(B), denied her asylum application, and issued her a voluntary departure order with a removal order in the alternative if she failed to depart the country. Lucy has not departed the country since this order was entered.

9. Lucy appealed the immigration judge's decision, but, in 2005, the Board of Immigration Appeals (BIA) affirmed the immigration judge's decision and her removal order became final. The BIA granted Lucy an additional 60 days to voluntarily depart the United States and ordered that Lucy should be removed in accordance with the immigration judge's removal

4

order if she failed to voluntarily depart. Lucy then petitioned for review in the Sixth Circuit to challenge the validity of her removal order. The Sixth Circuit granted Lucy a stay of removal and the voluntary departure period while her petition for judicial review was pending. Then in 2006, the Sixth Circuit denied her petition for review. Lucy has not departed the United States for any period of time since the immigration judge's original order of removal in 2003. Her removal order thus is final and valid. Lucy has not challenged her removal order since that time, and no court or agency has ever vacated, rescinded, reopened, or otherwise invalidated her removal order, so Lucy's removal order remains valid. Lucy's removal order has never been executed or withdrawn and remains outstanding. Lucy currently is under an order of supervision, checks in with federal officials regularly, and has an ankle bracelet. Additionally, Lucy's daughter, who was part of the same removal case as Lucy and received the same removal order, was recently deported under that same removal order.

10. Lucy has applied for deferred action under the Violence Against Women Act ("VAWA"). Lucy's pending VAWA application confers no immigration status and does not vacate her removal order. And Lucy has never been granted withholding of removal, protection under the Convention Against Torture, or any other relief from the removal order.

11. Lucy has remained in Tennessee for more than 90 days beyond the date that she was ordered removed. Indeed, for the past approximately 25 years, she has lived in Memphis, Tennessee. Her entire life and community—her sons, including one United States citizen son who is starting college and who she financially supports; her job, where she has worked for decades; and her doctors and immigration lawyer—are located in Tennessee. She lives in Memphis and intends to drive from Memphis to visit her son in Knox County; this trip will take her on I-40 and through Shelby, Fayette, Haywood, Madison, Henderson, Carroll, Decatur, Benton, Humphreys,

Hickman, Dickson, Williamson, Cheatham, Davidson, Wilson, Smith, Putnam, Cumberland, Roane, Loudon, and Knox Counties. Lucy intends to remain in Tennessee. She fears that she will be arrested, detained, and prosecuted under Section 1 because she has a final, valid, and outstanding removal order and will continue to fail or refuse to depart Tennessee more than 90 days after her removal order became final.

12.     Plaintiff Benjamin is a 35-year-old citizen of a foreign nation. He entered the United States on a visa when he was very young and overstayed the visa. Because he had been admitted, the government charged him as deportable under 8 U.S.C. § 1227(a)(1)(B) for being a noncitizen who remained beyond his authorized period of admission. His family applied for asylum, but, when he was a teenager, an immigration judge found him removable under 8 U.S.C. § 1227(a)(1)(B), denied the application, and issued him a voluntary departure order with a removal order in the alternative if he failed to depart the country. He has not departed the United States since that time.

13.     Benjamin's family appealed the immigration judge's decision, but the BIA affirmed the immigration judge's decision and granted an additional 60-day voluntary departure period. The BIA's decision made his removal order final. Benjamin then petitioned for review in the Sixth Circuit to challenge the validity of his removal order. The Sixth Circuit granted Benjamin a stay of removal and the voluntary departure period while his petition for judicial review was pending. Then, in 2006, the Sixth Circuit denied his petition for review. Benjamin has not departed the United States for any period of time since the immigration judge's original order of removal in 2003. His removal order thus is final and valid. Benjamin has not challenged his removal order since that time, and no court or agency has ever vacated, rescinded, reopened, or otherwise invalidated his removal order. Benjamin's removal order has never been executed or withdrawn.

6

Benjamin was placed on an order of supervision and checked in with federal officials. Additionally, Benjamin's sister, whose removal case was heard in a consolidated proceeding with Benjamin and who was ordered removed through the same order of the immigration judge, was recently deported under that removal order.

14. Benjamin later applied for and received deferred action under the Deferred Action for Childhood Arrivals (DACA) program, and he has had DACA ever since. DACA does not affect whether his removal order remains valid and outstanding. Deferred action under DACA may be terminated at any time in the discretion of federal immigration officials. Benjamin's deferred action under DACA confers no immigration status and does not vacate his removal order. And Benjamin has never been granted withholding of removal, protection under the Convention Against Torture, or any other relief from the removal order.

15. Benjamin has remained in Tennessee for more than 90 days beyond the date that he was ordered removed. Indeed, he has lived in Memphis for decades and is currently in an intensive training program until 2027. Benjamin intends to remain in Tennessee to complete his training program and thus to intentionally fail or refuse to depart from the State. He also intends to drive from Memphis to visit family in Knox County, which will take him through Shelby, Fayette, Haywood, Madison, Henderson, Carroll, Decatur, Benton, Humphreys, Hickman, Dickson, Williamson, Cheatham, Davidson, Wilson, Smith, Putnam, Cumberland, Roane, Loudon, and Knox Counties. He fears that he will be arrested, detained, and prosecuted under Section 1 because he has a valid and outstanding removal order and will continue to fail or refuse to depart Tennessee more than 90 days after his removal order became final.

16. Defendant Jonathan Skrmetti is the Attorney General and Reporter of the State of Tennessee. He is sued in his official capacity. In that capacity, he is responsible for enforcing and

7

defending the validity of H.B. 1704. Under Tenn. Code Ann. § 8- 6-109(b)(9), Defendant Skrmetti has the duty to "defend the constitutionality and validity of all legislation of statewide applicability." Under Tenn. Code Ann. § 8-6-109(b)(2), Defendant Skrmetti is also charged with attending to "all business of the state, both civil and criminal in the court of appeals, the court of criminal appeals and the supreme court," which include any appeals from prosecution under H.B. 1704. Defendant Skrmetti enforces H.B. 1704 by cooperating with each district attorney general upon his "request or direction . . . in the bringing, prosecution, defense, preparation, and trial of all cases in the circuit and chancery courts in which the attorney general and reporter is required to appear for the protection of the state or the public interest." Tenn. Code Ann. § 8-7-103(3). Defendant Skrmetti will conduct the State's prosecution of every Section 1 case on appeal, including the appeals of Plaintiffs and class members convicted under the statute. Defendant Skrmetti has not disavowed enforcement of H.B. 1704.

17.     Defendant Jeff Long is the Commissioner of Safety and Homeland Security for the State of Tennessee. He is sued in his official capacity. Defendant Long "assume[s] and exercise[s] the powers and duties of the Tennessee highway patrol," which are authorized to make arrests under H.B. 1704. Tenn. Code Ann. § 4-3-2003. Tennessee Highway Patrol operates statewide, and its main duty is to "[p]atrol the state highways and enforce . . . all rules and regulations of the department of transportation regulating traffic on and use of those highways." Tenn. Code Ann. § 4-7-104(1).  At a sheriff's request, THP troopers may also assist the sheriff in enforcing the criminal code. Tenn. Code Ann. § 38-3-103; *see Mullins v. State*, 304 S.W.2d 333, 358 (Tenn. 1957). Defendant Long has not disavowed enforcement of H.B. 1704.

18.     Defendant Charme Allen is the District Attorney General for the Sixth Judicial District of Tennessee, which includes Knox County. Defendant Allen is the prosecuting officer for

8

the trial court in the Sixth Judicial District. Under Tennessee law, she is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue her in her official capacity. Defendant Allen has not disavowed enforcement of H.B. 1704.

19. Defendant Russell Johnson is the District Attorney General for the Ninth Judicial District of Tennessee, which includes Roane and Loudon Counties. Defendant Johnson is the prosecuting officer for the trial court in the Ninth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Johnson has not disavowed enforcement of H.B. 1704.

20. Defendant Bryant C. Dunaway is the District Attorney General for the Thirteenth Judicial District of Tennessee, which includes Putnam and Cumberland Counties. Defendant Dunaway is the prosecuting officer for the trial court in the Thirteenth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Dunaway has not disavowed enforcement of H.B. 1704.

21. Defendant Jason Lawson is the District Attorney General for the Fifteenth Judicial District of Tennessee, which includes Wilson and Smith Counties. Defendant Lawson is the prosecuting officer for the trial court in the Fifteenth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes

and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Lawson has not disavowed enforcement of H.B. 1704.

22. Defendant Glenn Funk is the District Attorney General for the Twentieth Judicial District of Tennessee, which includes Davidson County. Defendant Funk is the prosecuting officer for the trial court in the Twentieth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Funk has not disavowed enforcement of H.B. 1704.

23. Defendant Stacey Edmonson is the District Attorney General for the Twenty First Judicial District of Tennessee, which includes Williamson County. Defendant Edmonson is the prosecuting officer for the trial court in the Twenty First Judicial District. Under Tennessee law, she is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue her in her official capacity. Defendant Edmonson has not disavowed enforcement of H.B. 1704.

24. Defendant Ray Crouch is the District Attorney General for the Twenty Third Judicial District of Tennessee, which includes Humphreys, Dickson, and Cheatham Counties. Defendant Crouch is the prosecuting officer for the trial court in the Twenty Third Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code

10

Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Crouch has not disavowed enforcement of H.B. 1704.

25. Defendant Neil Thompson is the District Attorney General for the Twenty Fourth Judicial District of Tennessee, which includes Carroll, Decatur, and Benton Counties. Defendant Thompson is the prosecuting officer for the trial court in the Twenty Fourth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Thompson has not disavowed enforcement of H.B. 1704.

26. Defendant Mark Davidson is the District Attorney General for the Twenty Fifth Judicial District of Tennessee, which includes Fayette County. Defendant Davidson is the prosecuting officer for the trial court in the Twenty Fifth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Davidson has not disavowed enforcement of H.B. 1704.

27. Defendant Jody Pickens is the District Attorney General for the Twenty Sixth Judicial District of Tennessee, which includes Henderson and Madison Counties. Defendant Pickens is the prosecuting officer for the trial court in the Twenty Sixth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Pickens has not disavowed enforcement of H.B. 1704.

11

28. Defendant Fred Agee is the District Attorney General for the Twenty Eighth Judicial District of Tennessee, which includes Haywood County. Defendant Agee is the prosecuting officer for the trial court in the Twenty Eighth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Agee has not disavowed enforcement of H.B. 1704.

29. Defendant Steve Mulroy is the District Attorney General for the Thirtieth Judicial District of Tennessee, which includes Shelby County, where Memphis is located. Defendant Mulry is the prosecuting officer for the trial court in the Thirtieth Judicial District. Under Tennessee law, he is empowered to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto," Tenn. Code Ann. § 8-7-103(1), including with respect to H.B. 1704. Plaintiffs sue him in his official capacity. Defendant Mulroy has not disavowed enforcement of H.B. 1704.

30. Several of the counties that Defendants serve as District Attorney Generals for and that Plaintiffs plan to pass through on their travels—including Shelby, Haywood, Madison, Henderson, Humphreys, Dickson, Cheatham, Louden, Putnam, Smith, Wilson, and Knox—have agreements with the federal government that allow state officers to perform the functions of an immigration officer.

31. Following the creation of the Memphis Safe Task Force, the Tennessee legislature passed the Audit and Pro Tem Act, which allows Tennessee's attorney general to review the Shelby County District Attorney's office's internal files and audit the reasoning for prosecutorial decisions. Additionally, the legislature passed the Memphis Safe Task Force Accountability Act,

12

which requires the Shelby County District Attorney's office to make reports every 10 days about the dismissal or settlement of charges that the federal task force files.

## STATEMENT OF FACTS

**A.**     **Legal Background: Comprehensive Federal Immigration System**

32. The federal government has exclusive power over the enforcement of immigration laws. *See*, *e.g.*, *Arizona v. United States*, 567 U.S. 387, 409-10 (2012).

33. Congress has created a comprehensive system of federal laws regulating immigration in the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1101 *et seq.*

34. Federal immigration statutes and the associated implementing regulations and precedential administrative law decisions form a detailed, complex, and finely reticulated regulatory regime. Congress has frequently amended the relevant provisions of the INA, including particularly significant legislation in 1952, 1965, 1980, 1986, 1990, 1996, 2000, 2001, 2005, and 2008, along with dozens of other Acts modifying the immigration regime in countless ways. Immigration legislation is proposed in every single Congress and frequently forms a point of major national debate.

35. Congress has created a complex system to regulate removal from the United States. *See generally* 8 U.S.C. §§ 1151–1382.

36. The INA contains complex and exclusive procedures for determining immigration and citizenship status and for determining whether an individual may lawfully remain in the United States, either temporarily or permanently.

37. Congress has specifically created removal proceedings and provided that they shall be "the sole and exclusive procedure" for determining whether a noncitizen may be removed from the United States. 8 U.S.C. § 1229a(a)(3). Under federal law, there is no single, readily

13

ascertainable category or characteristic that establishes whether a particular person may or may not be permitted to remain in the United States. The answer to that question can only be reached through the removal proceedings outlined in the INA and may also depend on the discretionary determinations of federal officials.

38. In removal proceedings, a noncitizen is charged with grounds of removability and, even if found removable, can seek certain forms of relief from removal, such as humanitarian protections or protections for special populations such as children and victims of crimes and trafficking.

39. If an Immigration Judge finds a noncitizen removable and does not grant relief from removal, they issue a removal order, which "conclud[es] that the alien is deportable or order[s] deportation." 8 U.S.C. § 1101(a)(47)(A). This removal order becomes final when the Board of Immigration Appeals affirms or the period to appeal lapses. 8 U.S.C. § 1101(a)(47)(B). A removal order is valid when it was lawfully entered and has not been vacated, rescinded, or otherwise invalidated through judicial review. Removal orders are presumed valid. To challenge a removal order's validity, a noncitizen must attack the deportation order itself, such as by petitioning for review in a federal court of appeals, rather than seeking immigration benefits that are not inconsistent with it. And a removal order is outstanding when it remains in force and is unexecuted and is not withdrawn, reopened, superseded, or displaced by a grant of relief from the removal order.

40. Even where a noncitizen has a valid and final removal order, that does not mean that a noncitizen will in fact be removed from the United States. Immigration judges may grant voluntary departure in lieu of removal, allowing noncitizens up to 60 days to voluntarily leave the United States before their removal order becomes effective. 8 U.S.C. § 1229c(b). If a noncitizen

14

petitions for review in a federal court of appeals, the court may reverse the order. 8 U.S.C. § 1252. Even after judicial review is exhausted, the existence of a final removal order does not mean the noncitizen will in fact be removed. A noncitizen may move the Executive Branch to reopen or reconsider a final order of removal for such matters as lack of a hearing notice for *in absentia* removal orders, new evidence of danger in the country where a person may be removed, or if the noncitizen has become eligible for immigration relief. *Id.* § 1229a(b)(5), (c)(6), (7).

41. Some individuals with final removal orders are nevertheless protected from removal to particular countries through withholding of removal and relief under the Convention Against Torture. *See* 8 U.S.C. § 1231(b)(3)(A) and Note. The government is still permitted to remove a noncitizen granted such relief to a safe third country. *See id*. § 1231(b)(2)(D), (E). Many people live in the United States indefinitely with both a final order of removal and such humanitarian protections.

42. Congress has also permitted noncitizens with final orders of removal to petition for various forms of immigration relief, including for unaccompanied children, *id.* § 1101(a)(27)(J); and status for certain victims of crime, trafficking, and domestic violence, *id*. §§ 1101(a)(15)(U), (T), 1182(a)(6)(A)(ii), (d)(13), (14). Some of these processes can lead to permanent immigration status despite the existence of a prior order of removal.

43. Qualifying noncitizens may also apply for various forms of discretionary protection from removal, such as Deferred Action for Childhood Arrivals ("DACA"), 8 C.F.R. § 236.21, Deferred Enforced Departure ("DED"), or Temporary Protected Status ("TPS"). 8 U.S.C. § 1254a; *see also* 8 C.F.R. § 241.6(a).

44. Congress has given federal immigration officials extensive discretion over all parts of the removal process, including when to initiate removal proceedings, which form of removal

15

proceedings to place a noncitizen in, and how to pursue removal proceedings. *See Arizona*, 567 U.S. at 396.

45.    Once a final removal order has been issued, federal officials decide whether and when to execute that order. *See Reno v. AADC*, 525 U.S. 471, 484-86 (1999). Federal officials choose whether to execute a person's removal order for a wide range of reasons, including national priorities, migration patterns, international relationships, and humanitarian concerns. *See id.* at 485; *Arizona*, 567 U.S. at 408. As a result, many noncitizens with final orders of removal remain in the United States for many years.

46.    Congress also has created crimes that regulate noncitizens with final removal orders.  8 U.S.C. § 1326 ("Reentry of removed aliens") provides criminal penalties for noncitizens who reenter the United States without authorization after entry of an order of removal.  8 U.S.C. § 1253 ("Penalties related to removal") provides criminal penalties for a failure to comply with a federal order of removal.  Whether to prosecute a noncitizen for these crimes is a matter of federal discretion; as with the execution of removal orders, federal officials may choose to prosecute a noncitizen—or not—for a wide range of reasons.

**B.    H.B. 1704**

47.    Governor Bill Lee signed H.B. 1704 on April 21, 2026.

48.    H.B. 1704 creates two new state law offenses.

49.    Section 1 makes it a state crime for "an alien against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a)" to "[i]ntentionally fail[] or refuse[] to depart from" Tennessee within 90 days from the date of the final order of removal under administrative processes or the final order of the court.

16

50. Section 1 includes no affirmative defenses, including for noncitizens who are seeking federal immigration relief.

51. This crime is a Class A misdemeanor, which carries a maximum sentence of 11 months and 29 days in jail and a maximum fine of $2,500.

52. Section 1 provides that, if the person "has not exhausted all available paths under federal law for challenging the final order of removal," the court "shall grant a stay of the criminal proceedings" until the person has exhausted those available paths.

53. Section 2 makes it a crime for "an alien that has been denied admission, excluded, deported, or removed from the United States or has departed the United States while an order of exclusion, deportation, or removal is outstanding" to "intentionally enter[] or attempt[] to enter" Tennessee.

54. The only affirmative defense applies where the person has obtained consent from the United States attorney general to reapply for admission or can show that the person was not required to obtain consent.

55. The Section 2 crime is also a Class A misdemeanor.

56. H.B. 1704 provides that Section 2 will take effect 30 days after the issuance of a United States Supreme Court decision overturning *Arizona v. United States*, 567 U.S. 387 (2012), in whole or in part, or adoption of a federal statute that "removes the preemption of states' ability to determine that a person is unlawfully present in th[e] state"—implicitly admitting that state immigration crimes are inconsistent with binding Supreme Court precedent and federal law.

57. But H.B. 1704 does not provide any such limitation as to Section 1, which took effect on July 1, 2026.

17

58.     Section 1 creates a new state immigration crime that bypasses the federal system. It allows state officers to unilaterally arrest, detain, and prosecute noncitizens with removal orders for intentionally failing or refusing to leave the state.  And it does not exempt noncitizens from this crime even if they are complying with all of their federal supervision obligations or applying for federal relief.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a class of other persons similarly situated.

60.     Plaintiffs seek to represent the following class: All noncitizens who, now or in the future, are aliens against whom a valid final order of removal has been outstanding for 90 days or longer by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a), and who intentionally fail or refuse to depart from Tennessee.

61.     The proposed class satisfies the requirements of Rule 23(a)(1) because it is so numerous that joinder of all members is impracticable.  Hundreds if not thousands of noncitizens will be subjected to arrest, detention, and prosecution under Section 1 and its implementation by Defendants.  The proposed class also includes numerous future noncitizens who will receive a removal order and enter Tennessee without intention to leave and who will thus be subjected to Section 1.

62.     The class satisfies the commonality requirements of Rule 23(a)(2).  The members of the class are subject to the same policy; they all face the same harms of arrest, detention, and prosecution under Section 1; and they all have the same claim under the Supremacy Clause.

63.     The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the Plaintiffs are typical of the claims of the class.  Each proposed class member,

18

including Plaintiffs, will face the same principal injury (arrest, detention, and prosecution), based on the same government practice (Section 1 and its implementation), which is unlawful as to the class because it violates the Supremacy Clause.

64. The proposed class satisfies the adequacy requirements of Rule 23(a)(4). Plaintiffs seek the same relief as the other class members: an order declaring Section 1 unlawful and an injunction preventing its enforcement. In defending their rights and the rights of their members, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

65. The proposed classes are represented by experienced attorneys from the American Civil Liberties Union Foundation Immigrants' Rights Project, the American Civil Liberties Union Foundation of Tennessee, and the National Immigration Law Center. Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens, including cases asserting very similar claims to the claims asserted here.

66. The proposed class also satisfies Rule 23(b)(2). Defendants will act on grounds generally applicable to the class by subjecting class members to arrest, detention, and prosecution under Section 1. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### Count One: Preemption (In Equity)

67. The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

68. Federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

69. Section 1 violates the Supremacy Clause because it attempts to regulate matters that are exclusively reserved to the federal government and because it operates in a field over which Congress has exercised exclusive authority.

70. Section 1 further violates the Supremacy Clause because it conflicts with federal laws, imposes burdens and penalties not authorized by and contrary to federal law, contradicts federal decisions on whether and when to execute removal orders, overrides federal immigration relief that applies to noncitizens with removal orders, and authorizes state officers to take unilateral immigration enforcement actions.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a. Declare that Section 1 of H.B. 1704 is unlawful;

b. Preliminarily and permanently restrain and enjoin Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them from enforcing Section 1; and

c. Grant any other and further relief that this Court may deem fit and proper.

Dated: July 17, 2026

Respectfully submitted,

*/s/ Lucas Cameron-Vaughn*
Lucas Cameron-Vaughn (BPR# 036284)
Zee Scout (BPR# 042637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, Tennessee 37212

Hannah Steinberg*
Cody Wofsy*
Oscar Sarabia Roman*
Spencer Amdur*
American Civil Liberties Union Foundation

20

Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
hsteinberg@aclu.org
cwofsy@aclu.org
osarabia@aclu.org
samdur@aclu.org

Noor Zafar*
Grace Choi*
Omar Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
nzafar@aclu.org
gchoi@aclu.org
ojadwat@aclu.org

Tel: (615) 320-7260
lucas@aclu-tn.org
zscout@aclu-tn.org

Peter McGraw*
Efrén Olivares*
Kevin Siegel*
National Immigration Law Center
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
mcgraw@nilc.org
olivares@nilc.org
siegel@nilc.org

*Attorneys for Plaintiffs*
*\* Pro hac vice application forthcoming*

21